U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

NOV 18 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Leger

Civil Action No. 11-1539

versus

Judge Richard T. Haik

Offshore Staffing Services of
Acadiana LLC

Magistrate Judge C. Michael Hill

**MEMORANDUM RULING**

Before the Court are Cross Motions for Summary Judgment On Insurance Coverage filed by plaintiff, Michael H. Leger [Rec. Doc. 151] and Hanover Insurance Company ("Hanover") [Rec. Doc. 152], Offshore Staffing Services of Acadiana LLC's ("OSSA") opposition to Hanover's Motion [Rec. Doc. 156], plaintiff's opposition to Hanover's Motion [Rec. Doc. 157] and Hanover's opposition to plaintiff's Motion [Rec. Doc. 158] For the following reasons, plaintiff's motion will be granted and Hanover's cross motion will be denied.

*I. Background*

This action under the Jones Act and General Maritime Law arises from personal injuries plaintiff, Michael Leger ("Leger"), allegedly sustained on April 26, 2011, while working for defendant Offshore Staffing Services of Acadiana, LLC ("OSSA") as a rigger/roustabout on an offshore jack-up drilling rig owned by Seahawk Drilling, Inc. ("Seahawk"), the SEAHAWK 3000. *R. 1, ¶ V.* At the time of the accident, OSSA was working for Seahawk pursuant to a Master Service Agreement dated February 1, 2011 (the "MSA"), in the capacity of providing industrial and catering personnel staffing. *R. 151-8, Exh. F, Master Service Agreement.* Sections 8.2 and 8.3 of the MSA set out reciprocal indemnity obligations of the parties. In particular, Section 8.2 provided:

> Contractor[OSSA] shall release, defend, indemnify, and hold harmless Company Group [Seahawk] from and against any and all Losses arising out of the personal or bodily injury, sickness, disease or death or property damage,

destruction or loss suffered by any member of the Contractor Group in connection with this Agreement.

*R. 151-8.*

In his First Amended Complaint, plaintiff named Seahawk and Navigators Insurance Company as defendants. *R. 53.* Thereafter, the Court granted plaintiff's motion to dismiss Seahawk without prejudice in light of Seahawk's Chapter 11 bankruptcy filed in the Southern District of Texas on February 11, 2011. *R. 90, 91.* By Amended Complaints, plaintiff named Hanover Insurance Company and Aspen Insurance U.K. Limited ("Aspen")[1] directly, as insurers of Seahawk. *R. 53, 78, 114.*

In his Motion, plaintiff alleges that the Hanover Policy[2] provides coverage to OSSA, the insured, for OSSA's contractual obligation to defend and indemnify Seahawk for its tort liability to plaintiff and names Seahawk as an additional insured as required by the MSA's reciprocal indemnity obligations of OSSA and Seahawk. OSSA filed a Cross Claim against Hanover and Aspen asserting that it is owed indemnification and/or alternatively contribution should OSSA be determined to be liable to plaintiff. *R. 145, 146.*

*II. Summary Judgment Standard*

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P.56(c). A genuine issue of fact exists only "[i]f the evidence is

---

[1] Plaintiff alleged that Aspen is the insurer of Seahawk and "in the event that the reciprocal indemnity obligations that exist in the contract between OSSA and [Seahawk] is [*sic*] is declared null and void and that [Hanover] is not called upon to pay for all damages sustained by [Leger] in the accident aboard the SEAHAWK 3000, then and in that event, [Aspen] is called upon to pay for all damages sustained by [Leger] in the accident aboard the SEAHAWK 3000." *R. 114,* ¶*V.C.*

[2] The Hanover Policy is a Marine General Liability Policy, Number IHY 8297377 00.

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248(1986).

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the nonmovant and draws all reasonable inferences in his favor. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528 (5th Cir.1997). "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir.1995). Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Wood v. Houston Belt & Terminal Ry.*, 958 F.2d 95, 97 (5th Cir. 1992). "We do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 394 (5th Cir.2000).

*III. Analysis*

Plaintiff moves for summary judgment against Hanover for contractual defense and indemnity. Plaintiff contends that Hanover provides coverage for Seahawk's liability for his injuries pursuant to the MSA executed between OSSA and Seahawk in that the terms of the indemnity provisions require OSSA to defend, indemnify and name Seahawk as an additional insured. In its cross motion for summary judgment, Hanover argues that no defense or indemnity is owed under the MSA because: (1) the indemnity obligations in the MSA are precluded by the Louisiana Oilfield Anti-Indemnity Act ("LOAIA"); (2) Plaintiff has no right

3

of Direct Action against Hanover for the claims alleged; and, (3) Seahawk assigned all of its rights in the MSA through its bankruptcy, negating any defense, indemnity and additional insured obligations.

In its opposition to Hanover's Motion, OSSA represents that, "Seahawk filed for Chapter 11 bankruptcy on February 11, 2011. On April 27, 2011, an Asset Pruchase Agreement was effected between Seahawk and Hercules Offshore, Inc., in which Seahawk sold nearly all of its assets, including the MSA, to Hercules. By letter dated July 3, 2012, attorneys on behalf of the Seahawk Liquidated Trust, as successor in interest to Seahawk Drilling, Inc., made demand upon OSSA and its insurers to defend and indemnify Seahawk for the claims alleged by plaintiff, and further demanded, pursuant to the requirements of the MSA, that OSSA's insurer provide coverage, defense and indemnity to Seahawk for plaintiff's claims

*A. Whether the MSA was a Maritime Contract*

In its cross motion for summary judgment, Hanover argues, (1) the Seahawk 3000 jack-up rig is not a vessel; (2) the MSA is not a maritime contract; (3) the Outer Continental Shelf Lands Act ("OCSLA") requires the application of Louisiana law; and (3) under the Louisiana Oilfield Anti-Indemnity Act ("LOAIA") the defense and indemnity obligations in the MSA are null and void. OSSA argues that the Seahawk 3000 jack-up rig is a vessel "under well-settled jurisprudence" and the MSA is a maritime contract. Because the LOAIA is inconsistent with federal maritime law, the indemnity and insurance provisions of the MSA are therefore valid and enforceable. Thus, as a threshold matter, the Court must decide whether the MSA qualifies as a maritime contract. *See Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 789 n. 9 (5th Cir.2009) ("in determining whether state law applies in an OCSLA action, predicated on a contract, it is permissible to consider whether

4

the contract at issue is a maritime contract before considering whether OCSLA situs has been established"). For the reasons that follow the Court finds that the MSA is a maritime contract. Accordingly, the Court pretermits any discussion of the applicability of OCSLA in this matter.

In determining whether a contract is maritime, the court's consideration is two-fold. *Davis and Sons, Inc. v. Gulf Oil Corporation*, 919 F.2d 313 (5th Cir.1990), *reh'g denied*, 924 F .2d 1054 (1991). Specifically, a court must analyze the historical treatment of similar contracts in the jurisprudence and also make a fact-specific inquiry. *Davis*, 919 F.2d at 316. If the historical treatment is not dispositive, then a court is directed to make a fact-specific inquiry. When making this inquiry, courts must analyze these six factors: (1) what the specific work order in effect at the time of the injury provided; (2) what work the crew assigned under the work order performed; (3) whether the crew was assigned to work aboard a vessel in navigable waters; (4) to what extent the work being done related to the mission of the vessel; (5) what the principal work of the injured worker was; and (6) the work the injured worker was actually doing at the time of the injury. *Id.* "The maritime or non-maritime status of the contract ultimately depends on its 'nature and character,' not on its place of execution or performance." *Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 381 (5th Cir.2005) (quoting *Davis*, 919 F.2d at 316).

It is undisputed that the Seahawk 3000 was a jack-up rig. A jack-up rig is a drilling vessel used for offshore drilling operations.[3] *Pitre v. Custom Fab of Louisiana, LLC*, 2013 WL 4499029, 3 (E.D.La.,2013) (citing W. Scott Hastings, *To Avoid Drowning in the Gaps of Workers' Compensation Coverage on the Outer Continental Shelf*, 35 J. Mar. L. & Com.

---

[3] The Court disagrees with Hanover's contention that the jack-up rig was not a vessel under *Lozman v. City of Rivera Beach, Florida*, 133 S.Ct. 735 (2013).

35, 44 n. 41 (2004)). "[T]he fact that a jack-up drilling rig is a vessel is not dispositive of the nature or character of the contract. In turn, the courts' interpretations of contracts involving work on jack-up rigs has been fluent. In some instances, courts have found that, although the obligation under the contract was inherently non-maritime in nature, the contract was maritime because the use of the rig-vessel was central to the work performed under the contract. Other courts, however, have found that a non-maritime obligation forms a non-maritime contract, regardless of the fact that the work was performed on a rig-vessel." *Baloney v. Ensco, Inc.*, 2013 WL 1856039, 4 (E.D.La.,2013) (internal citations omitted). Accordingly, the Court will analyze the *Davis* factors.

The first *Davis* factor requires the Court to consider the specific work order in effect at the time of the injury. Here there was no specific written work order in effect governing the work being done on the day of the incident. Rather OSSA sent plaintiff to the SEAHAWK 3000 pursuant to an oral request by Seahawk to work as a rigger/roustabout. *R. 152-4, Depo. Of Moncrief, p.19, ll. 5-14, 24-25; R. 151-7, Depo. Of Willis, p. 48, ll. 7-11.* At the time of the incident plaintiff's crew was tasked with moving drill pipe on the deck of the SEAHAWK 3000. *R. 128-4, p. 56, ll. 9-20.* Moving drill pipe supported the SEAHAWK 3000's mission of drilling oil and gas wells. Accordingly, this factor weighs in favor of the MSA being a maritime contract.

The second factor requires the Court to analyze what work the crew assigned under the work order actually did. Plaintiff testified in his deposition that he was assigned to scrub the deck of the SEAHAWK 3000 and work with the crane on the jack-up rig. *Id. At p. 66, ll. 14-19.* On the day of the incident, plaintiff's crew was tasked with moving drill pipe on the deck of the SEAHAWK 3000. Tasks such as "chipping, painting and cleaning" a vessel contribute to the mission of the vessel. *Jenkins v. Aries Marine Corp.*, 554 F.Supp.2d 635,

6

640 (E.D.La.,2008).

The third factor asks the Court to consider whether the crew was assigned to work aboard a vessel in navigable waters. In the Fifth Circuit, jack-up drilling platforms are considered vessels under maritime law. *Barker v. Hercules Offshore, Inc.* 713 F.3d 208, 215 (5th Cir. 2013) (citing *Demette*, 280 F.3d at 498, n. 18 ("[t]his circuit has repeatedly held that special-purpose movable drilling rigs, including jack-up rigs, are vessels within the meaning of admiralty law"). This factor favors a finding that the MSA is a maritime contract.

Under the fourth factor, the Court must question the extent to which the work being done was related to the mission of the vessel. The SEAHAWK 3000's mission was the drilling of oil and gas wells. As provided in the foregoing, cleaning of the vessel, operation of the crane and the moving of drill pipe, contributed to the vessel's mission. *See Hoda*, 419 F.3d at 383(plaintiff's work was "inextricably intertwined with the activity of the rig," and that work was "an integral part of drilling, which is the primary purpose of the vessel.")

The fifth and sixth factors related to the tasks of the injured worker. Specifically, the Court must assess the principal work of the injured worker and what the injured worker was doing at the time of the alleged injury. Plaintiff testified that his duties included cleaning the deck of the SEAHAWK 3000 and working with the crane. On the date of the incident, plaintiff was moving drill pipe on the deck. Accordingly, these two factors weigh in favor of the MSA being a maritime contract.

Ultimately, there is no broad characterization whereby oil and gas services contracts are maritime whenever they contribute to the mission of a jack-up drilling rig. *See Hoda v. Rowan Companies, Inc.*, 419 F.3d 379, 383 (5th Cir.2005). Accordingly, courts are directed to make a fact-specific inquiry. Based on the facts of this case the Court finds that the MSA is a maritime contract.

*B. Indemnity Provisions*

As the MSA is a maritime contract, the contract's indemnity provisions are enforceable under maritime law. *See Hoda*, 419 F.3d at 383. The Court finds that OSSA is entitled to indemnity in this case.

The MSA set out reciprocal indemnification provisions which required OSSA to defend and indemnify Seahawk against any and all claims made by an employee of OSSA against Seahawk for damages, including damages caused by Seahawk's fault or negligence. *R. 151-8*. The MSA further required OSSA to support its indemnity obligations with certain types of insurance, including requiring OSSA to name Seahawk as an additional insured. *Id.* Pursuant to this obligation, OSSA obtained a "Marine General Liability" policy from Hanover which provided that Seahawk, for whom OSSA was performing work, was an additional insured on the Hanover policy. *R. 151-10, p. 4, Exh. G Part 2, Hanover Policy*.

"A maritime contract containing an indemnity agreement, whether governed by federal maritime or Louisiana law, should be read as a whole and its words given their plain meaning unless the provision is ambiguous." *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 834 (5th Cir.1992). The indemnity provisions "[s]hould not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir.1981). Thus, an indemnity provision "will not afford protection unless its terms are expressed unequivocally." *Hardy*, 949 F.2d at 834.

The Court finds that the indemnity provision found in the MSA is clear and unambiguous that OSSA agreed to "defend, indemnify, and hold harmless" Seahawk for claims asserted by its employee such as the plaintiff in this case.

8

*C. Seahawk's Bankruptcy*

Hanover asserts that Seahawk's Chapter 11 bankruptcy and the sale of its assets to Hercules, including the MSA, eliminates Hanover's obligation to provide coverage of Seahawk's liability. While Seahawk divested itself of its contractual rights under the MSA on April 27, 2011, the accident at issue occurred on April 26, 2011. Thus, on the date of the accident, the MSA was in effect between OSSA and Seahawk. Pursuant to the MSA, Seahawk was named as an additional insured and Hanover was therefore obligated at the time of the accident to provide coverage for any liability for the accident on the part of Seahawk. An insurer such as Hanover cannot avoid its coverage obligations by the bankruptcy of its insured. *See In re Coho Resources, Inc.*, 345 F.3d 338, 343 (5th Cir. 2003)(citing *Owaski v. Jet Florida Sys., Inc. (In re Jet Florida Sys., Inc.)*, 883 F.2d 970, 972 (11th Cir.1989).

*D. Plaintiff's Direct Action Against Hanover*

Hanover further asserts that even if plaintiff's claims are governed by general maritime law, the Louisiana Direct Action Statute[4] is inapplicable, and plaintiff is not entitled to bring an action directly against Hanover as the insured of Seahawk.

"[T]he right of direct action exists only if the policy was 'written or delivered in the state of Louisiana' or 'the accident or injury occurred within the state of Louisiana.'" La.Rev.Stat. Ann. § 22:1269; *Versai Management Corp. v. Progressive Cas. Ins. Co.*, 2012

---

[4] The Direct Action Statute was renumbered from LRS § 22:655 to § 22:1269, effective 01/01/2011, the language of B. (2) did not change and states in pertinent part:

> B. (2) This right of direct action shall exist whether or not the policy of insurance sued upon was written or delivered in the state of Louisiana and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the state of Louisiana....

WL 1118669, 4 (E.D.La.,2012) (citing *Webb v. Zurich Ins. Co.*, 205 So.2d 398, 406 (La.1967). Here, it is undisputed that the Hanover Policy was issued to OSSA and delivered in the state of Louisiana. Moreover, it is settled law that the Direct Action Statute may be invoked by a plaintiff injured on a vessel whether or not it is located in the Louisiana territorial waters. *Sassoni v. Savoie,* 327 F.Supp. 474 (E.D.La.1971) (the court permitted the application of the direct action statute to an injury arising beyond the territorial waters of the state); *Koesler v. Harvey Applicators, Inc.,* 416 F.Supp. 872, 874 (D.C.La. 1976) (if a plaintiff is injured on a vessel whether or not it is located in Louisiana territorial waters, or on the high seas, he could invoke the Louisiana direct action statute). Accordingly, plaintiff's Direct Action against Hanover is proper.

E. *OSSA's Cross Claim Against Hanover*

Based on the foregoing, OSSA is entitled to bring its Cross-Claim to secure the benefits and protections of the insurance protection it placed with Hanover - for indemnificaiton and/or contribution from Hanover as insurer of Seahawk. Accordingly, OSSA's Cross-Claim will not be dismissed.

*Conclusion*

Based on the foregoing, plaintiff, Michael H. Leger's, Motion For Summary Judgment [Rec. Doc. 151] will be granted, and Hanover Insurance Company's Motion For Summary Judgment [Rec. Doc. 152] will be denied.

Richard T. Haik, Sr.