U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED     LAFAYETTE

NOV 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Leger                                              Civil Action No. 11-1539

versus                                             Judge Richard T. Haik

Offshore Staffing Services of                      Magistrate Judge C. Michael Hill
Acadiana LLC

## MEMORANDUM RULING

Before the Court are Cross Motions for Summary Judgment On Liability filed, with a Supplemental Brief,[1] by plaintiff Michael H. Leger [Rec. Docs. 121, 135, 139, 143], and Hanover Insurance Company ("Hanover") [Rec. Doc. 129], as well as Offshore Staffing Services of Acadiana LLC's ("OSSA") oppositions to plaintiff's Motion [Rec. Doc. 127, 150] and Hanover's opposition to plaintiff's Motion [Rec. Doc. 128]. For the reasons that follow, the cross motions for summary judgment will be denied.

*I. Background*

On August 23, 2011, plaintiff, Michael Leger ("Leger"), filed this action under the Jones Act and General Maritime Law against Offshore Staffing Services of Acadiana, LLC ("OSSA") for personal injuries he allegedly sustained on April 26, 2011, while working as a roustabout on a jack-up drilling rig owned by Seahawk Drilling, Inc. ("Seahawk"), the SEAHAWK 3000. *R. 1, ¶ V.* At the time of the accident, the SEAHAWK 3000 was located at East Cameron Block 328, in the Gulf of Mexico, performing drilling operations.

---

[1] Record documents 135, 139 and 143 all contain an identical pleading. Record Document 143 also contains an "uncertified rough draft" of the deposition of Davis Celestine, the crane operator.

On or about April 13, 2011, OSSA hired plaintiff and put him to work as a roustabout/rigger on April 14, 2011 aboard the SEAHAWK 3000. Plaintiff alleges he was connecting a tag line on a bundle of drill pipe when the crane operator began picking up the pipe. *R. 121, Exh. B.* The pipe swung towards plaintiff and, although he tried to move out of the way, the drill pipe hit him in the area between his waist and chest and pushed him against the third-party building unit or "man quarters." *Id.* Plaintiff alleges he sustained various personal injuries including to his elbow, ribs and lower back, which prevent him from returning to work. *Id.* After the accident, plaintiff alleges the crane operator told him that he did not see him. *Id.*

Plaintiff filed the motion for summary judgment *sub judice* on April 19, 2013, moving for summary judgment against OSSA and Hanover "on the issue of liability and requesting a separate trial on the issue of damages." *R. 121.* On May 1, 2013, the Court granted Hanover's motion to extend the deadline to file its opposition to the motion until July 9, 2013 in order to allow additional discovery of the crane operator, pursuant to FRCP 56(d). *R. 125.* The hearing on plaintiff's motion was reset for August 15, 2013. On July 23, 2013, Hanover filed its cross-claim on liability and the motion was set for hearing on September 19, 2013. *R. 131.* The parties took the deposition of the crane operator on August 13, 2013 and the Court granted plaintiff's motion to continue the September 19, 2013 hearing to October 17, 2013. On September 23, 2013, plaintiff and Hanover filed a second set of cross-motions which were scheduled for hearing on November 14, 2013. *R. 151, 152.*

*II. Summary Judgment Standard*

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.* If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e).

*III. Analysis*

Plaintiff seeks summary judgment in his favor and against Hanover and OSSA on the issue of liability. Because plaintiff's only allegations of negligence or fault asserted in the motion are of the crane operator and Seahawk, and plaintiff specifies no particular entity as to his allegations under the Jones Act, the Court will assume that plaintiff is seeking a determination under state law that the crane operator was negligent and that Seahawk is liable

for the crane operator's purported negligence under *respondeat superior*, as well as a determination under the Jones Act that OSSA and/or Seahawk is liable as plaintiff's Jones Act employer.

In support of his contentions, plaintiff cites the August 13, 2013 deposition of Davis Celestine. Celestine testified that on the day of the accident in question, he was employed by Seahawk Drilling, Inc., working aboard the SEAHAWK 3000, as a crane operator. *R. 143-1, pp. 7-8, ll.22-25; 1-3, p. 10, l.20.* At that time his duties involved supervising the roustabouts – including plaintiff, Michael Leger. *Id., pp. 11-12, ll.25 - 14.* Celestine stated that at the time of the accident, he was operating the crane, roustabout Timothy Parker was the "signal man" and plaintiff was working as a roustabout. *Id., p.13, ll.20-25.* While he an his crew were moving a bundle of drill pipe from the catwalk to the pipe rack area of the rig, Parker made the "circular movement" indicating to Celestine to pick up the load. *Id., p. 20-21, ll.18-25, 1-4.* The lift was a "blind lift" because he couldn't actually see the load. *Id., p. 18, ll. 4-7.* While he and his crew were not using radios to communicate, he was relying on the signalman to tell him when it was safe to pick up the load. *Id., p. 18, ll.11-25i.* As Celestine lifted the load, it shifted. Celestine could not see the plaintiff because "wireline equipment" was blocking his view of him, but he stopped the lift when he saw the crane line come towards him. *Id., p. 17, ll.13-21; pp. 21-22, ll.17-25, 1-12.* Celestine got a call over the "geitronic phone," the communication system on the rig, from "a member of the rig floor" letting him know someone may have been injured. Celestine got out of his crane to see what happened. *Id., p. 22, ll. 20-25.* He believed that plaintiff showed the indication of an injury. *Id., p. 18, ll.18-20.*

In opposition to the motion, OSSA asserts that plaintiff has failed to allege any negligence or wrongdoing on behalf of OSSA, and instead alleges only that the accident at issue was due solely to the negligence of the crane operator—with whom OSSA denies any relationship. OSSA cites plaintiff's January 28, 2013 deposition in support of its position, noting that plaintiff confirmed that all safety meetings on the SEAHAWK 3000 were conducted by a Seahawk appointed supervisor and that plaintiff reported to and received his assignments from the crane operator located on the vessel. *R. 127, Exh. A, Plaintiff's Depo., pp. 56-60.* OSSA further cites correspondence from James Moncrief to Seahawk's Human Resources Manager dated March 24, 2011 in which Moncrief advised that "OSSA's employee will work on a drilling rig in a seasonal changing environment as a laborer, specifically unloading and loading crew boats and crew supply boats while taking direction from lead personnel." *R. 127, Exh. E.* OSSA maintains that Moncrief's deposition confirms that OSSA laborers "primarily do what they are told to do by Seahawk." *R. 127, Exh. C, p. 12.*

OSSA objects to the Statement of Undisputed Facts related to plaintiff's Motion in which he states he "did nothing to cause or contribute to the [a]ccident." *R. 121-13.* OSSA asserts that plaintiff was at least contributorily negligent in causing his alleged injuries by failing to act with prudence in assisting the crane operator. In support of his position, OSSA points to the Incident Report in which plaintiff wrote, "Apparently [the] load was not centered as it swung toward me." *Id., p. 92, ll. 22-23.* OSSA also contends "plaintiff testified he was responsible for loading and unloading equipment, securing and hooking loads to be lifted by the crane and crane operator, determining where to position the sling, and to signal or flag the

crane operator as to where the load should be placed." *R. 150, pp. 2-3.* In his deposition, however, plaintiff stated that his job was "scrubbing the deck and working with a crane." *R. 150-1, p. 163, ll. 10-24.* Plaintiff stated that the drill pipe was already on the sling and he did not remember who hooked the sling to the crane cable. He confirmed that he attached a tag line to the load to be lifted by the crane operator but he had no idea where the load was going." *Id., p. 68, ll. 7-25, p.194, ll. 11-23.* OSSA argues that plaintiff's contentions that he was without fault are completely self serving as they are contradicted by the incident report in which he stated that the load was not centered, his own testimony and the facts of this case. Because plaintiff had no idea where the load was to be placed and in fact placed himself directly in the path of the lift, OSSA contends that plaintiff was at least contributorily negligent in causing his alleged injuries by failing to act with prudence in assisting the crane operator.

While much of Hanover's Cross Motion For Summary Judgment was rendered moot by the deposition of Davis Celestine and the filing of its Motion For Summary Judgment as to insurance coverage, Hanover also assets that plaintiff cannot meet his burden of showing that he did not cause or contribute to his injury. Hanover argues that plaintiff acknowledged his own fault in his deposition when he admittedly stated that he approached the bundle of drill pipe without letting the crane operator know he was there, without being instructed by anyone to do so, without any knowledge of the load he was approaching or where it was going and without being able to see the crane operator. *R. 128, Exh. B, Plaintiff's Depo., p.68, l. 7 - p.69, l. 2, p.170, ll. 2-4, p.189, ll. 12-14, p.191, ll. 12-20, p. 192, ll. 7-16, p.193, ll. 9-21, p.194, ll. 13-23.*

A motion for summary judgment can only be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Before a court can find that there are no genuine issues of material facts it must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Ladue v. Chevron, U.S.A., Inc.*, 920 F.2d 272 (5th Cir. 1991).

The Court finds there exists genuine issues of material fact as to whether or not plaintiff was negligent or contributory negligent in causing the accident by failing to properly assist the crane operator. Moreover, as to any attempted claim that Leger was Seahawk's Jones Act employee, the Court finds that plaintiff has failed to offer any evidence in support of such a contention, and therefore, there exist genuine issues of material fact. Accordingly, the Cross Motions For Summary Judgment will be denied.

_____
Richard T. Haik, Sr.
United States District Judge